IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

SHADOW GLEN 2021, LLC and

    Plaintiff,

v.                                                          Case No.: 3:22-cv-05163-TAD-KDM

STEWARD HEALTH CARE SYSTEM, LLC,
d/b/a GLENWOOD REGIONAL MEDICAL
CENTER and MPT OF WEST MONROE LLC

    Defendants.

**FIRST AMENDED VERIFIED COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF**

**COMES NOW**, the Plaintiff, Shadow Glen 2021, LLC, by and through undersigned counsel of record, and hereby files this First Amended Verified Complaint for Damages and Injunctive Relief. For causes of action against Defendant, Steward Health Care System, LLC d/b/a Glenwood Regional Medical Center and MPT of West Monroe LLC, Plaintiff would allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff, Shadow Glen 2021, LLC (hereafter, "Owner" or "Plaintiff"), is a limited liability company organized under the laws of the State of Louisiana. Owner's members are each a resident of, and domiciled in, the State of New Jersey.

2.      Defendant, Steward Health Care System, LLC d/b/a Glenwood Regional Medical Center is a limited liability company organized under the laws of the State of Delaware, with a principal address of 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201, and may be served

1

with process via its registered agent, CT Corporation System, at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.  Defendant is, upon information and belief, a subsidiary of Steward Health Care Network, Inc., a Delaware chartered corporation with a principal place of business of 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.  For purposes of citizenship, Defendant, Steward Health Care System, LLC d/b/a Glenwood Regional Medical Center is therefore believed to be a resident of Delaware and Texas.

3. Defendant, MPT of West Monroe LLC, is a limited liability company organized under the laws of the State of Delaware, with a principal address of 1000 Urban Center Drive, Suite 501, Birmingham AL 35242, and may be served with process via its registered agent, CT Corporation System, at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.  Defendant is a wholly owned subsidiary of Medical Properties Trust, Inc., a Maryland chartered corporation with a principal place of business of 3500 Colonnade Parkway, Suite 540, Birmingham, Alabama 35243.  For purposes of citizenship, Defendant, MPT of West Monroe LLC is therefore believed to be a resident of Maryland and Alabama.

4. Defendant, Steward Health Care System, LLC d/b/a Glenwood Regional Medical Center and Defendant, MPT of West Monroe LLC are sometimes referred to herein individually and other times collectively as "Defendant".

5. This dispute is as to real property located at 1001 Glenwood Drive, West Monroe, Ouachita Parish, Louisiana 71291, and more commonly known as the Shadow Glen Apartments (formerly the Glenwood Trace Apartments and Westwood Apartments) (hereafter, the "Apartment Complex"), owned by Plaintiff, and 503 McMillan Road, West Monroe Louisiana 71291 (hereafter the "Hospital")[1], the land for which is owned by Defendant, MPT of West Monroe LLC and the

---

[1] Reference herein to the Hospital shall refer to the entire parcel, including any and all buildings, outbuildings, and all parking, maintenance, physical plan, and green areas.

2

Hospital located on the land being owned and managed by Defendant, Steward Health Care System, LLC d/b/a Glenwood Regional Medical Center.

6. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendant, and the members of each of them, are citizens of different states and, therefore, there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of fees and costs.

7. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, and all the property that is the subject of this action is situated in this judicial district. Additionally, Defendant is subject to personal jurisdiction in the State of Louisiana and this judicial district as Defendant has purposely availed itself of the laws of the State of Louisiana and has sufficient minimum contacts with the State —through, *inter alia*, ownership of real property and conducting substantial business and commerce within the State— to warrant the exercise of personal jurisdiction.

## **FACTS**

8. Plaintiff is the fee simple Owner of the Apartment Complex.

9. Owner purchased the Apartment Complex from its prior owner, LCP West Monroe, LLC, in or about May 2021.

10. Defendant MPT of West Monroe LLC ("Defendant MPT Land Owner") hold title to the real property upon which the Hospital is located.

11. Upon information and belief Defendant MPT of West Monroe LLC is either owned or controlled or both by Defendant, Steward Health Care System, LLC d/b/a Glenwood Regional Medical Center.

12. Defendant, Steward Health Care System, LLC d/b/a Glenwood Regional Medical Center ("Defendant Steward Health Care")is the owner and operator of the Hospital on the real property and responsible for the buildings and grounds.

13. The Hospital occupies a nearly 12-acre parcel on the Southeast corner of McMillan Road and Thomas Road in West Monroe, Louisiana.

14. Defendant Steward Health Care acquired the Hospital as the result of a merger with the Hospital's prior owner/operator IASIS Healthcare, LLC in 2017.

15. At that time, and as a result of that merger, Defendant Steward Health Care became the "sole operator" of "36 individual hospitals across ten states – including Glenwood Regional Medical Center in West Monroe, Louisiana."[2]

16. In addition to the Hospital in West Monroe, Defendant Steward Health Care owns and operates hospitals in, *inter alia*, Arizona, Arkansas, Colorado, Texas, and Utah.

17. Defendant Steward Health Care claimed to be "the largest private hospital operator in the U.S." (*Id*.).

18. The Apartment Complex is comprised of 17 individual structures of varying sizes, one (1) of which comprises the leasing and business office (and community pool), and the remainder contain multi-family units of different sizes.

19. The largest buildings at the Apartment Complex contain up to eight (8) individual apartments, while the smaller buildings contain between four (4) and six (6) apartments each.

20. The Apartment Complex and Hospital are contiguous, with the Apartment Complex occupying approximately 5 acres directly South of the Hospital.

---

[2] Glenwood Regional Medical Center, *Steward Health Acquisition of Iasis Healthcare*, https://www.glenwoodregional.org/newsroom/2017-09-29/steward-health-completes-acquisition-iasis-healthcare (last accessed August 8, 2022).

21. The southern border of the Hospital's parcel is the northern border of the Apartment Complex's parcel.

22. This boundary area, and shared property line, runs almost exactly due East-West for approximately 648 feet (the "Boundary," as depicted by the white measuring line below).



(The foregoing image is a screen capture from Google Maps with a measurement line placed along the Boundary between the Hospital and Apartment Complex).

23. The Hospital sits at a higher elevation than the Apartment Complex.

24. On the Western portion of the Boundary, the Hospital sits approximately seven (7) to eight (8) feet higher in elevation, which tapers down to only a few feet in elevation towards the middle and Eastern portion of the Boundary.

25. The change in elevation between the properties correlates to the Boundary between them (as depicted below in the EagleView Imagery archive available from the Ouachita Parish Assessor's Office, with the white lines depicting change in elevation).[3]



---

[3] Imagery such as this can be accessed by searching the Ouachita Parish Assessor's website by physical address and selecting the "Map" icon to the left of the search result(s). When the map of the parcel appears, click the button labeled "EagleView Imagery." This allows the user to select "layers," including lines of elevation.

26. Along the boundary, the Defendants, or its predecessor in interest, constructed a retaining wall fronted by —or potentially even constructed with— standard cinderblocks painted (at one time) white (the "Retaining Wall") – topped by a six (6) to eight (8) foot chain link fence.

27. The Apartment Complex's five (5) Northern-most buildings sit adjacent to the Boundary, separated from the Retaining Wall by a small through-space approximately seven (7) to eight (8) feet wide.

28. Some of the Retaining Wall may be more structurally sound than other portions and, perhaps, not in imminent danger of collapse.

29. However, there is a portion of the Retaining Wall that sits near the Western end of the Boundary —closest to Thomas Road and the neighboring Chic-fil-A restaurant— which stands approximately seven (7) feet tall.[4]

30. This portion of the Retaining Wall is immediately adjacent to the Hospital's physical plant.

31. Only a few feet to the North of the Retaining Wall at this section are several large, industrial HVAC units (as can be seen in the image in Paragraph 18, *supra*).

32. This portion of the Retaining Wall has failed.

33. This portion of the Retaining Wall is replete with cracks and voids.

34. This portion of the Retaining Wall is changing shape as the earth behind it pushes the Retaining Wall out in places.

35. This portion of the Retaining Wall is further impacted by the damage being caused by tree roots which have been left unattended and which now are puncturing the Retaining Wall.

---

[4] The Retaining Wall is nine (9) blocks tall. Each block is approximately eight (8) inches tall, with the blocks sandwiched between a concrete slab on the top and bottom.

36. Over the last several months, water, earth, and other debris have begun to seep and leak from the Retaining Wall onto Owner's property.

37. Indeed, this water and material has gotten into and fouled some of the tenant HVAC systems (or their condensers), which sit in the throughway between the Northern Apartment Complex buildings and the Retaining Wall.

38. Combined with the failing Retaining Wall, water is being directed upon Owner's Property, and/or the flow or water from the Hospital onto the Apartment Complex has been altered.

39. This has caused flooding events in the through-way between the Northern Apartment Complex buildings and the Retaining Wall.

40. This flooding has impacted and damaged the apartments of tenants residing at the Apartment Complex.

41. This flooding has created and contributed to the accumulation of mud and other debris on Owner's property.

42. This flooding has created and contributed to erosion on Owner's property.

43. The Apartment Complex was forced to place sandbags at the base of the Northern most buildings in an effort to mitigate and abate water intrusion.

44. All of these issues have created a hazardous area for maintenance personnel and tenants alike. The photographs below depict this Western section of the Retaining Wall:

 

45. Owner commissioned a third-party contractor to inspect the Retaining Wall and provide an opinion as to its stability and, if necessary, cost of repair.

46. The Apartment Complex's contractor opined that:

It appears that the retention wall is completely ineffective as it has been pushed past its limits by the moving earth from the property adjacent to Shadow Glenn. The rainwaters have nowhere to go other than to the retention wall and this water intrusion has caused the earth behind the wall to move and push the [wall] cinder blocks out. The adjacent property is owned by the Glenwood Regional Medical Center.

The condition of the wall has deteriorated past the point of repair. The entire wall must be disassembled and rebuilt — after the hospital fixes the drainage and erosion issues which has directly caused this issue.

47. Indeed, upon information and belief, the Retaining Wall is not properly constructed to begin with or otherwise fails to meet applicable code requirements.

48. In order to fully remediate the issue, the contractor estimated the total repair cost, including permitting and planning, to be approximately Two Hundred Fifty Thousand Dollars ($250,000.00).

49. On January 17, 2022, Owner's counsel provided written notice to Defendant Steward Health Care of the dangerous condition of the Retaining Wall, the damage the Retaining Wall's deteriorated condition was causing, and the Owner's concerns should the Retaining Wall fail – whether in whole or in part. A copy of Counsel's Letter is attached hereto and incorporated herein as Exhibit A.

50. Owner, through counsel, advised that the Retaining Wall must be fixed immediately.

51. Though there were some preliminary discussions between Owner's counsel and Defendant Steward Health Care, neither Defendant Steward Health Care nor Defendant MPT Land Owner has taken any steps to remediate the serious structural and safety issues presented by the failing Retaining Wall.

52. In the intervening months since contact with Defendant Steward Health Care Defendant, the Retaining Wall has continued to deteriorate, and the flooding issue has become worse.

53. With the end of summer and the coming of fall rains, the Retaining Wall is in imminent danger of total collapse and/or failure.

54. If that collapse occurs, tens of thousands of cubic yards of dirt, water, and other debris will collapse and or subside into Owner's property.

55. In addition, if the collapse occurs, the Hospital's HVAC units could likewise fall into Owner' Property,

56. With only a few feet separating the higher-in-elevation Hospital property and the Northern most buildings of the Apartment Complex, all of that subsiding earth and debris will slide directly into occupied apartment units.

57. This will cause massive property damage.

58. This will also endanger the health and safety of the occupants and their personal property.

59. If any of the buildings are affected by the foregoing, those buildings will have to be vacated during the pendency of all repairs and remediation. As a result, Owner will lose out on valuable rents – rents which are used to pay its monthly debt service on the property.

60. Moreover, if any of the buildings are affected by the foregoing, Owner's Lender may call the underlying mortgage loan in default and exercise default related rights provided in the Loan Agreement.

61. In the event the Lender calls a default, foreclosure proceedings shall ensue, and Owner will be in danger of losing the entire Property.

62. Though the Apartment Complex has already been damaged by, among other things, the flooding and damage caused by the failing Retaining Wall, a total failure would be catastrophic.

63. While a repair has been estimated to cost $250,000.00, a collapse —even if only partial— would cause more than a Million Dollars in damages.

## FIRST CAUSE OF ACTION:
## VIOLATION OF LA. CIV. CODE ANN. ART. 655-656, 667 & NUISANCE

64. Owner hereby incorporates and realleges each of the foregoing paragraphs of this Verified Complaint as if set forth herein verbatim.

65. Defendant MPT Land Owner's property is the dominant estate as it sits higher in elevation from the Apartment Complex.

66. Defendant Steward Health Care's Hospital likewise sits higher in elevation from the Apartment Complex.

67. While the Apartment Complex is bound to receive surface water that flows naturally, Defendants have altered the natural flow of water onto the Apartment Complex.

68. The Defendants' alteration of the flow of water has made the Owner's servitude more burdensome.

69. As set forth above, the portion of the Retaining Wall that is the most damaged sits only a few feet from several large HVAC units and/or condensers.

70. Those HVAC units produce and leak water and other chemicals which have been funneled into the Retaining Wall and have directly contributed to its failure.

71. Defendant Steward Health Care has altered the flow of water by allowing the Retaining Wall to deteriorate, by not ensuring adequate drainage, and by permitting its HVAC units to produce and discharge excess water and chemicals produced by the physical plant into the Retaining Wall and Owner's Property.

72. The continued accumulation of unnatural amounts of water presents a danger of continued flooding and damage to the concrete slabs (i.e., the foundations) for the Northern most buildings of the Apartment Complex.

73. If the water is permitted to accumulate under the foundation, it will damage those foundations and risks the structural integrity (and habitability) of the buildings.

74. As such, Owner is entitled to damages and injunctive relief to stop and/or remediate the damage being caused and the damage that will be caused by the continuing conditions and for the repair or replacement of the Retaining Wall.

## SECOND CAUSE OF ACTION
## NEGLIGENCE & DAMAGE TO REAL PROPERTY

75. Owner hereby incorporates and realleges each of the foregoing paragraphs of this Verified Complaint as if set forth herein verbatim.

76. The Defendants have a duty to maintain the real property in good condition and in such a manner as to not infringe or endanger the Owner's free use and enjoyment of its owner property (the Apartment Complex).

77. The Defendants have a duty to maintain the improvements on the real property, physical plant, and equipment (i.e., the HVAC units) in such a condition that they do not negatively impact Owner's right to full use and enjoyment of its Property.

78. That duty is owed, not just to Owner, but to all other property owners whose land adjoins the Hospital.

79. The Defendants' failures to maintain the HVAC units adjacent to the Retaining Wall violates its duty to Owner.

80. The Defendants were advised of the dangerous and defective nature of the Retaining Wall nearly eight (8) months ago, yet the Defendant has done nothing to remedy the situation.

81. Upon information and belief, the Retaining Wall is not properly constructed and/or is not otherwise compliant with the applicable building conde, rules, or regulations.

82. The Defendants' conduct in actively ignoring the conditions it has created or permitted to exist, as set forth herein, is the proximate and legal cause of Owner's damages, and will be the proximate and legal cause of Owner's future damages when the Retaining Wall fails.

83. Owner has been damaged by the flooding caused by the failing Retaining Wall and the Hospital's conduct in that Owner (and its tenants), among other things, has been deprived of

full use and enjoyment of the Apartment Complex and has been forced to remediate conditions caused the Defendants' conduct.

### THIRD CAUSE OF ACTION
### INJUNCTIVE RELIEF

84. Owner hereby incorporates and realleges each of the foregoing paragraphs of this Verified Complaint as if set forth herein verbatim.

85. As set forth herein, the Retaining Wall is not constructed properly and/or is in immediate and imminent danger of failure.

86. Likewise, Defendants' acts and omissions have contributed to Owner's ongoing damages and will continue to damage Owner in the future without Court intervention.

87. That failure threatens not just damage to the real property and personal property, but also harm to the Apartment Complex tenants, Owner's staff, and/or visitors to the Apartment Complex.

88. That failure likewise threatens Owner's loan on the Property and presents an imminent and irreparable risk of a loan default and foreclosure.

89. Absent injunctive relief, Owner will suffer irreparable harm.

90. Owner requests the issuance of a mandatory injunction, requiring the Defendants, jointly or severally, to: (i) pursuant to applicable code and the direction of a licensed engineer, immediately reinforce the areas of the Retaining Wall that appear most likely to fail; (ii) commission an immediate inspection by a properly and duly licensed profession to inspect the Retaining Wall and provide a detailed report of his/her findings and costs estimates; and (iii) undertake all repairs determined to be needed; repair any damage already caused.

91. Owner requests that the Court waive the bond requirement of Fed. R. Civ. P. 65(c) or otherwise require only a nominal bond.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Shadow Glen 2021, LLC prays that:

A. Proper process issue and be served upon Defendants, and that Defendants be required to answer this First Amended Verified Complaint within the time prescribed by law;

B. Owner be awarded a judgment for all compensatory damages to which it is entitled, in an amount to be proven at trial;

C. Owner be awarded punitive damages for the malicious, intentional, and wanton acts of Defendant, in an amount to be proven at trial;

D. Owner be awarded its reasonable attorneys' fees, costs, and expenses associated with bringing and prosecuting this action;

E. Owner be awarded discretionary costs;

F. Owner be awarded injunctive relief as set forth herein and that a hearing on Owner's request for permanent injunctive relief be calendared as soon as possible; and

G. Owner be awarded such other and further relief, whether general or specific, legal or equitable, to which Plaintiff may be entitled at law, in equity, or otherwise.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By: /s/ S. Joshua Kahane
    S. Joshua Kahane (*Admitted Pro Hac*)
Aubrey B. Greer (*Admission Pro Hac Pending*)
Joseph E. Horowitz (*Admission Pro Hac Pending*)
6000 Poplar Ave., Suite 400
Memphis, TN 38119
Phone: (901) 525-1322
Fax: (901) 525-2389

        jkahane@glankler.com
        agreer@glankler.com
        jhorowitz@glankler.com

**HUDSON POTTS & BERNSTEIN LLP**

By: /s/ Jay P. Adams_____
   Jay P. Adams (LA 18755)
1800 Hudson Lane, Suite 300
Monroe, LA 71201
Phone: (318) 388-4400
Fax: (318) 322-4194
jadams@hpblaw.com

*Attorneys for Plaintiff, Shadow Glen 2021, LLC*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and exact copy of the foregoing has been served upon all counsel of record via the Court's ECF filing system on this 6th day of March 2023.

        /s/ S. Joshua Kahane_____